UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| COREY DELAHOUSSAYE<br>AND C-DEL, INC.<br><br>VERSUS<br><br>LIVINGSTON PARISH, LOUISIANA<br>LUTHER LAYTON RICKS, JR.<br>INDIVIDUALLY AND IN HIS OFFICIAL<br>CAPACITY, ALVIN FAIRBURN AND<br>ASSOCIATES, PROFESSIONAL<br>ENGINEERING CONSULTANTS<br>CORPORATION, INTERNATIONAL<br>EQUIPMENT DISTRIBUTORS, INC. | CIVIL ACTION<br><br><br><br>NO. 12-00481-SDD-SCR |

## RULING ON MOTIONS TO DISMISS

Before the Court are Defendants, Livingston Parish and Luther Layton Ricks, Jr.'s *Motion to Dismiss for Improper Venue*,[1] Defendant, *Alvin Fairburn and Associates' First* and *Second Motions to Dismiss*,[2] and Defendant, Professional Engineering Consultants Corporations' *Motion to Dismiss*.[3] Plaintiffs, Corey Delahoussaye and C-Del, Inc., have filed oppositions to each of these motions.[4] A hearing was held on August 14, 2013 to address whether Plaintiffs had successfully pled a conspiracy. Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The Court will address each motion separately in turn.

---

[1] Rec. Doc. 6.
[2] Rec. Docs. 11 and 22.
[3] Rec. Doc. 25. Defendant Professional Engineering Consultants Corporations also filed a reply memorandum in support of its motion to dismiss. Rec. Doc. 35.
[4] Rec. Docs. 9, 17, 24, and 30.

1

## I. Background

Plaintiffs have alleged that, on October 27, 2009, they entered into the "Livingston Parish Project Manager Environmental and Right of Way Services" contractual agreement (hereinafter "Agreement") with Defendant Livingston Parish. Pursuant to the Agreement, the Plaintiffs were responsible for organizing and managing certain aspects of post-Gustav clean-up efforts in Livingston Parish, while ensuring that work performed by contractors, including Alvin Fairburn and Associates (hereinafter "AFA"), Professional Engineering Consultants Corporation (hereinafter "PEC"), and International Equipment Distributors, Inc. (hereinafter "IED"), complied with federal and state guidelines.[5] Shortly thereafter, Plaintiffs allege that they discovered improper billing practices, and irregular and unlawful arrangements entered into by contractors in violation of federal and state laws, rules, and regulations.[6] Plaintiffs contend that they attempted to notify Defendant, Livingston Parish, of these wrongdoings to no avail.[7] In addition, Plaintiffs allege that they reported the illegal conduct with documentation to the Federal and State Government and to the media.[8] As a result of what Plaintiffs refer to as their "whistle-blowing" activities, Plaintiffs contend that Defendant, Livingston Parish, voted on August 25, 2011 to

---

[5] Rec. Doc. 1, pp. 2-3, ¶3.
[6] Rec. Doc. 1, pp. 3-4, ¶5.
[7] Rec. Doc. 1, p. 4, ¶7.
[8] Rec. Doc. 1, p. 4, ¶7.

2

terminate its contract with them.[9]  On September 24, 2011, Plaintiffs' contract was officially terminated.[10]

On August 8, 2012, Plaintiffs filed the instant lawsuit against Livingston Parish, Parish President Ricks, in his Official and Individual capacity, AFA, PEC, and IED (collectively "Defendants").  Plaintiffs have alleged violations under state law for retaliation, defamation, libel, and slander, and they seek treble damages for the alleged unlawful and deceptive practices of the Livingston Parish Defendants under La. R.S. 51:1409[11].  Additionally, Plaintiffs have alleged that Defendants conspired together in an effort to deprive Plaintiffs of their constitutional rights guaranteed under the First and Fourteenth Amendments.  In particular, Plaintiffs allege that the Defendants violated their Fourteenth Amendment right to their good name and reputation. Individually, Plaintiff Delahoussaye contends that Defendants violated his First Amendment right to report and oppose unlawful practices and his Fourteenth Amendment right to earn a living; whereas, Plaintiff C-Del has independently alleged that Defendants allegedly violated its Fourteenth Amendment right to contract and due process of law.[12]

## II.   Livingston Parish and Parish President's 12(b)(3) Motion to Dismiss

Defendants, Livingston Parish and Parish President Ricks (collectively "Livingston Parish Defendants"), contend that this matter should be dismissed for

---

[9] Rec. Doc. 1, p. 4, ¶8.
[10] Rec. Doc. 1, p. 4, ¶8.
[11] Louisiana Unfair Trade Practices Act ("LUTPA").
[12] Rec. Doc. 1, pp. 7-8, ¶17.

improper venue under Federal Rule of Civil Procedure 12(b)(3). The Livingston Parish Defendants direct the Court's attention to Section VIII.F of the Agreement[13] which states "[a]ny litigation arising out of this Agreement shall be had in the Courts of 21[st] Judicial District Court, Livingston Parish, Louisiana".[14] Based on this provision of the Agreement, the Livingston Parish Defendants posit that, because Plaintiffs' dispute arises out of the contract, venue is only proper in the 21st Judicial District Court of Livingston Parish.[15] The Livingston Parish Defendants further contend that, under Louisiana law, such forum-selection clauses are *prima facie* valid, legal, and binding, and only under certain circumstances, such as fraud, should such clauses not be enforced; it is their position that no such circumstances exist here. Therefore, the Livingston Parish Defendants posit that the parties are bound by the contractual choice of forum provision and this matter must be dismissed.

Plaintiffs oppose the Livingston Parish Defendants' motion contending that venue is appropriate because the activities giving rise to this lawsuit occurred within the Middle District. Plaintiffs also contend that the choice of forum clause is inapplicable because the scope of the claims extends beyond the terms of the Agreement, the clause's language is not exclusive, the alleged violations of state

---

[13] Rec. Doc. 1, Contractual Agreement, Rec. Doc. 1-8. "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[14] Rec. Doc. 1-8.
[15] Rec. Doc. 6.

4

and federal law occurred after the termination of the Agreement, and because enforcing the terms of the clause would violate a strong public policy.

"Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases."[16] Forum selection clauses in written contracts are presumptively valid and should be honored unless "enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[17] "Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."[18] The party opposing the application of a forum selection clause has a "heavy burden of proof."[19]

When assessing the scope of a forum selection clause, "the court should examine the language of the parties' contract(s) to determine which causes of action fall within its scope and are governed by it."[20] Notably, "[w]hether a forum

---

[16] *PHI, Inc. v. Rolls-Royce Corp.*, 2010 WL 883794, at *8 (W.D.La. Mar. 9, 2010) (quoting *Alliance Health Group, LLC v. Bridging Health Options*, LLC, 553 3d 397, 399 (5th Cir. 2008)).
[17] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed. 2d 513 (1972)("*The Bremen*").See also, *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13 (5th Cir. 1995).
[18] *Haynesworth v. The Corporation*, 121 E.3d 956, 963 (5th Cir. 1997).
[19] *The Bremen*, 407 U.S. at 17, 92 S.Ct. 1907.
[20] *Bancroft Life & Cas. ICC, Ltd. V. FFD Resources II, LLC*, 884 F.Supp.2d 535, 549 (S.D.Tx. 2012).

selection clause covers other causes of action depends mainly on how broadly the clause is worded."[21]

The forum selection clause at issue provides that it would apply to "litigation arising out of the Agreement." Jurisprudentially, the phrase "arising out of" within the context of an insurance contract has been "interpreted as indicating a causal connection."[22] Here, the Agreement sets forth specific conditions regarding the scope of work to be performed, compensation, payment for services and equipment, and various performance, indemnification, and insurance requirements. Hence, the Court finds that, because Plaintiffs' LUTPA claims pertain to payment for services arising out of the Agreement, the choice of forum provision must control these claims; therefore, Plaintiffs' LUTPA claims shall be dismissed without prejudice.

However, the Court will retain jurisdiction over the remaining allegations against the Livingston Parish Defendants arising under La. R.S. 23:967, La. R.S. 42:1169, the First and Fourteenth Amendments, and conspiracy to deprive Plaintiffs of their constitutional rights. Unlike Plaintiffs' unfair trade practices claims, the Court finds that Plaintiffs' remaining claims against the Livingston Parish Defendants do not arise out of the terms of the Agreement. Moreover, the conspiracy claims involve other parties-Defendants not subject to the choice of forum provision.

---

[21] *Id.*
[22] *Coregis Ins. Co. v. Am. Health Found., Inc.* 241 F.3d 123, 128 (2nd Cir. 2001)(quoting *Am. States Ins. Co. v. Guillermin*, 108 Ohio App.3d 547, 671 N.E.2d 317, 325 (1996); see also, *Braspetro Oil Services Co. Modec (USA) Inc.*, 240 Fed.App'x. 612, 616 (5th Cir. 2007).

Therefore, the Court GRANTS in part and DENIES in part Defendants Livingston Parish and Ricks' *Motion to Dismiss for Improper Venue*.[23]

### III. AFA's First and Second 12(b)(6) Motion to Dismiss

As an initial matter, Defendant AFA's first *Motion to Dismiss*[24] was dismissed as moot since Plaintiffs filed an amended complaint in an effort to remedy the pleading's defects. Subsequently, AFA filed a second *Motion to Dismiss Pursuant to Rule 12(b)(6)*[25] seeking dismissal of Plaintiffs' conspiracy claims under 42 U.S.C. § 1983 for failure to allege sufficient factual support for these claims. For the reasons below, the Court grants Defendant AFA's second motion.

Contrary to the position argued by Plaintiffs' counsel at oral argument, the Court finds that the fact pleading standards of Rule 8 of the Federal Rules of Civil Procedure articulated in United States Supreme Court decisions, *Bell Atlantic Corp. v. Twombly*[26] and *Ashcroft v. Iqbal*[27], apply in all cases and are not limited in application to those cases involving a qualified immunity defense.[28] As such, the Plaintiffs must plead factual allegations that illustrate an agreement among Defendants to deprive Plaintiffs of a constitutional right. Therefore, the Court relies on the *Twombly* and *Iqbal* standards in reaching its decision herein.

---

[23] Rec. Doc. 6.
[24] Rec. Doc. 11.
[25] Rec. Doc. 22.
[26] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 662 (2007). The Court further notes that *Twombly* involved allegations of conspiracy under Section 1 of the Sherman Act.
[27] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[28] Rec. Doc. 42, p. 16: "We go on in various specific detail, although it is not necessary because, again, *Twombly* and *Iqbal* clearly apply only in the confines of qualified immunity."

7

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[29] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[30] In *Twombly*, the Court explained "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[31] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[32] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[34] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[35]

---

[29] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[30] *Id.*
[31] *Twombly*, 550 U.S. at 555(internal citations and brackets omitted)(hereinafter *Twombly*).
[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[33] *Twombly*, 550 U.S. at 570.
[34] *Iqbal*, 556 U.S. at 678.
[35] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Plaintiffs have alleged that their contract with Livingston Parish required them "to organize and oversee certain aspects of clean-up efforts conducted by AFA, PEC and IED in Livingston Parish necessitated by Hurricane Gustav...Livingston Parish hired AFA, PEC and IED as contractors to provide these services, and as such, [Plaintiffs] were to interface with FEMA and GOHSEP officials and ensure compliance by AFA, PEC and IED with federal and state guidelines."[36] Plaintiffs have further alleged that they "uncovered various irregularities with and improper billing of work done by AFA, PEC and IED."[37] Plaintiffs claim that they "repeatedly notified, both verbally and in writing, Defendant Livingston Parish of the repeated violations of federal and state laws, rules, and regulations."[38] They also reported the illegal conduct to officials on the state and federal level, as well as the media.[39] Plaintiffs contend that the Defendants, both public and private actors, conspired to retaliate against them for "whistleblowing" by securing the termination of Plaintiffs' contract with Livingston Parish and by defaming them.[40] Relying on this premise, Plaintiffs contend that all of the Defendants are liable as state actors under 42 U.S.C. § 1983.[41]

Although 42 U.S.C. § 1983 claims are facially limited in applicability to government actors, federal jurisprudence does extend such claims to include

---

[36] Rec. Doc. 1, pp. 2-3, ¶3.
[37] Rec. Doc. 1, p. 3, ¶5.
[38] Rec. Doc. 1, p. 4, ¶7.
[39] Rec. Doc. 1, p. 4, ¶7.
[40] Rec. Doc. 1, pp. 6-7, ¶15; Rec. Doc. 20, p.10, ¶14k.
[41] Rec. Doc. 1, p. 6, ¶15.

9

private actors in limited circumstances.[42] A private actor may be held liable under 42 U.S.C. § 1983 if he is a "willful participant in joint activity with the State or its agents."[43] A viable conspiracy claim requires the plaintiff to allege facts that suggest "(1) an agreement between the private and public defendants to commit an illegal act, and (2) an actual deprivation of constitutional rights."[44] The Fifth Circuit recently reemphasized that "[a] plaintiff must 'allege specific facts to show an agreement.'"[45] "Allegations that are merely conclusory, without reference to specific facts, will not suffice."[46]  Additionally, "the acts of the alleged conspirators must show a 'unity of purpose, common design, and understanding or meeting of the minds in an unlawful arrangement.'"[47]

Addressing the first element, Defendant AFA argues that Plaintiffs have failed to plead facts alleging an agreement between the private and public Defendants to commit an illegal act, and, therefore, the Plaintiffs' claims fail to establish the circumstances necessary to extend a claim under 42 U.S.C. § 1983 to private actors. After reviewing the Plaintiffs' *Complaint* and *Supplemental and Amending Complaint* [hereinafter "*Complaints*"], the Court concludes that the Plaintiffs have failed to allege facts that show the existence of an agreement between the public and private Defendants.

---

[42] *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).
[43] *Cinel v. Connick*, 15 F.3d 1338, 1343, citing *Adickes v. S.H. Kress & Co.*, 393 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L. Ed. 2d 142 (1970).
[44] *Id.*
[45] *Bohannan v. Doe*, 2013 WL 2631197 at *14 (5th Cir. 2013).
[46] *Priester v. Lowndes Cnty.*, 354 F.3d 414 (5th Cir. 2004); see also *Smith v. Rheams*, 2012 WL 2088971, at *5. (M.D.La. 2012).
[47] *Glotfelty v. Hart*, 2012 WL1204736 (E.D. La. 2012).

10

The Court has identified the following statements, taken from the Plaintiffs' *Complaints*, as making the strongest showing of a conspiracy:[48]

1. "On May 25, 2011, on Canyon Road in Livingston Parish, Ted York, a high ranking official with AFA, met with Petitioners and threatened Petitioners: 'don't f*** with us [referring to AFA, IED, PEC, and LP] or you'll pay.'"[49]

2. In June of 2011, "Eddie Aydell, a high ranking official with AFA, refused to provide Petitioners with any documentation relating to the cleaning of the LP Gravity Drainage Districts. Aydell on behalf of AFA told Petitioners: 'if we're not getting paid for da** books and putting all this sh** together, then we're not giving them to C-Del.' . . . Aydell, on behalf of AFA, then angrily responded to Petitioners that AFA was going to do what it wanted to do, that IED, PEC, and LP were 'on board' with it, and that Petitioners needed to shut up about the matter."[50]

3. Also in June of 2011, "Petitioners met with Tom Carnes, a high ranking official with IED about the AFA/Aydell encounter and the refusal to release the public documents. During this meeting, Carnes, on behalf of IED, told Petitioners that he had 'jumped' Aydell's a** and told Aydell 'you wait a f***ing minute, we're supposed to be in this together'. Carnes also admitted, during that meeting that he, on behalf of IED, AFA, PEC, and LP all knew that LP Gravity Drainage District canals, which all of the defendants billed for cleaning, never existed before Gustav."[51]

4. On July 16, 2011, "Ted York, a high ranking official with AFA, met Petitioners in front of Petitioner Delahoussaye's residence and angrily confronted Petitioners about their continuing statements . . . York, on behalf of AFA, again threatened Petitioners: 'don't f*** with me or we [referring to AFA, IED, PEC, and LP] will hurt you.' York, on behalf of AFA, then proceeded to tell Petitioners to 'not call the EPA and shut his project down.'"[52]

---

[48] The Court asked Plaintiffs' counsel if she would agree with the Court's assessment that these excerpts were in fact the strongest. Plaintiffs' counsel stated that all of the allegations in her *Complaints* showed the existence of an agreement for purposes of the conspiracy. Rec. Doc. 42, p. 20 (lines 9-20).
[49] Rec. Doc. 20, p. 3, ¶5d. Bracketed portion of quotation in original.
[50] Rec. Doc. 20, pp. 3-4, ¶5e.
[51] Rec. Doc. 20, p. 4, ¶5f.
[52] Rec. Doc. 20, pp. 5-6, ¶5i. Bracketed portion of quotation in original.

5. At a Livingston Parish meeting on August 25, 2012, "Gene Baker, on behalf of LP, publicly stated that Petitioners were 'hurting them [referring directly to LP, AFA, IED, and PEC] and bringing in more problems' because of the on-going Federal investigation into the activities of LP, AFA, IED, and PEC."[53]

6. "On July 26, 2011, during a meeting with Gravity Drainage District #1, LP, through its attorney and in the presence of AFA, IED, PEC threatened Petitioners that Petitioners were 'either on our side' or on the side of the Corps [of Engineers]. . . LP through its representative, reiterated that Petitioners needed to be 'on our side' referring directly to LP, AFA, IED, and PEC, or else."[54]

Based on the foregoing allegations, Plaintiffs contend that "each of the defendants . . . conspired with one another to publicly punish and harass Petitioners and secure the termination of his contract . . . and formulated a plan to publicly defame Petitioners in order to forever tarnish Petitioners' reputation, and, further, to silence his protected activities and taint Petitioners' anticipated testimony and evidence regarding the unlawful billing practices."[55]

Interpreting the well-pleaded facts as true, the Court finds that the Plaintiffs have failed to show specific facts of any agreement among the Defendants to support a viable conspiracy claim. Within their *Complaints,* the Plaintiffs have alleged that certain statements were made on certain dates at specific meetings in support of their conspiracy claim; however, it is unclear as to whom the statements were meant to include. For example, in their *Supplemental and Amending Complaint,* the Plaintiffs allege that a high ranking official with AFA

---

[53] Rec. Doc. 20, pp. 7-8, ¶¶14b-14c. Bracketed portion of quotation in original.
[54] Rec. Doc. 20, p. 6, ¶5j. Bracketed portion of quotation in original.
[55] Rec. Doc. 20, p. 10, ¶14k.

12

(York) threatened them by stating, "we will hurt you."[56] And yet, it is unclear as to whom the "we" in "we will hurt you" is referring. This uncertainty extends to at least two other alleged statements where the terms "us" ("don't f*** with us or you'll pay") and "them" ("Petitioners were 'hurting them'") are used.[57] Although the Plaintiffs have inserted their own explanatory brackets to suggest which entities were encompassed in such statements, the Court finds that it is clearly impossible to infer without speculation as to whom these terms refer.

Likewise, it is also unclear as to what the Defendants were allegedly "on board with" or what Defendants AFA or IED were "supposed to be in . . . together" in the statements relied upon by Plaintiffs, since such allegations are susceptible to multiple interpretations, and it is quite possible that the Defendants' representatives could have been referring to the cooperative agreements.[58] Although these allegations, interpreted in a light most favorable to the Plaintiffs, might be consistent with an agreement, "pleaded facts 'merely consistent' with liability do not make a claim plausible."[59] Considering these bare circumstances, the Court cannot reasonably infer the existence of an agreement. Therefore, these factual allegations are insufficient to "nudge [Plaintiffs'] claims" of conspiracy "across the line from conceivable to plausible."[60]

---

[56] Rec. Doc. 20, p. 6, ¶5i.
[57] Rec. Doc. 20, p. 3, ¶5d; Rec. Doc. 20, p. 7, ¶14c.
[58] Rec. Doc. 20, p. 4, ¶¶ 5e and 5f.
[59] *Glotfelty v. Hart*, 2012 WL 1204736, at *7 (E.D.La. 2012)(citing *Iqbal*, 129 S.Ct. at 1949).
[60] *Twombly*, 550 U.S. at 570.

In yet another allegation, the Plaintiffs contend that all of the Defendants were present at a July 26, 2011 Gravity Drainage District meeting when a conspiratorial statement was made. According to Plaintiffs' *Complaints*, however, the alleged conspiratorial statement was not made by any of the alleged Defendants. Instead, Plaintiffs have alleged that Defendant Livingston Parish's legal counsel—a *non-party*—made the statement. Again, the Court would have to rely on sheer speculation in order to infer that a non-party's statement can show that the Defendants, the alleged conspirators, had a meeting of the minds in an unlawful arrangement.

The Court has reviewed the *Complaints* several times and has attempted to identify actual factual allegations that would suggest that the Defendants—public and private—agreed to commit an illegal act. Under *Twombly*, "the Supreme Court held in the context of proof of contract or conspiracy in restraint of trade under Section 1 of the Sherman Act, the claim 'requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.'"[61] When asked to identify an allegation of an agreement during oral argument, Plaintiffs' counsel directed the Court to paragraph 15 of the original *Complaint* which states in pertinent part: "Specifically, Petitioners allege, upon information and belief, that the defendants each conspired with one another to secure the silence of Petitioners such that Petitioners would not oppose nor blow the whistle on the on-going wrongdoing and improper billing being undertaken at

---

[61] *Glotfelty v. Hart*, 2012 WL 1204736, at *6 (E.D.La. 2012)(citing, *Twombly*, 550 U.S. at 556).

14

taxpayer expense."[62] However, this allegation is a legal conclusion, not one based on fact; a point that Plaintiffs' counsel concurred with during oral argument.[63]

In order to satisfy the plausibility standard to survive a motion to dismiss, the Plaintiffs must show "more than a sheer possibility that the defendant has acted unlawfully."[64] At best, the *Complaints* consist of an amalgamation of individual circumstances that Plaintiffs aver equate to a collective meeting of the minds, or to some sort of agreement among the Defendants, to support their conspiracy claims. As previously discussed, however, Plaintiffs' factual allegations are insufficient to raise Plaintiffs' right to relief beyond the speculative level in order to state a plausible cause of action. Furthermore, Plaintiffs' contention that each Defendant conspired and formulated a conspiratorial plan together to secure the termination of Plaintiffs' contract, and to defame and silence Plaintiffs, amounts to nothing more than a disfavored conclusory allegation.[65] Considering all of the allegations set forth in Plaintiffs' *Complaints,* the Court finds that the factual allegations fail to suggest that an agreement among the Defendants was, in fact, made. Therefore, Plaintiffs' conspiracy claims cannot survive a Rule 12(b)(6) motion to dismiss and AFA's *Second Motion to Dismiss* is GRANTED.

---

[62] Rec. Doc. 1, pp. 6-7, ¶ 15. Rec. Doc. 42, pp. 27 (lines 17-25) – 28 (lines 1-9).
[63] Rec. Doc. 42, p. 28 (lines 11-13).
[64] *Iqbal*, 556 U.S. at 678.
[65] Rec. Doc. 20, p.10, ¶14k.

## IV. PEC's Motion to Dismiss

PEC's arguments challenging Plaintiffs' conspiracy claims mirror those presented by AFA. PEC, however, goes one step further. In Plaintiffs' *Amended Complaint*, they allege that "each of the defendants, as evidenced by their overt statements and conduct set forth above, conspired with one another to publicly punish and harass Petitioners and secure the termination of his contract because of their oppositions to unlawful practices and Petitioners' protected activities."[66] PEC aptly points out that the *Complaints* are devoid of any allegations that PEC made any "overt statement" or engaged in any "conduct" in furtherance of the conspiracy to "publicly punish and harass Delahoussaye." In fact, the only statement attributed to PEC is in the *Amended Complaint* where a PEC representative, who, when confronted, allegedly admitted that billing for cleaning canals was wrong.[67] This allegation shows independent action, and does not offer factual support of any agreement or conspiratorial arrangement.

During an August 9, 2011 public meeting, Plaintiffs allege that they accused Defendants of illegal canal cleaning. In response to this claim, Plaintiffs assert that a PEC representative, along with representatives of AFA, IED, and Livingston Parish, then publicly agreed that Plaintiffs were lying and incompetent.[68] The Court agrees with argument raised by counsel for PEC during oral argument that defending oneself when confronted with an allegation

---

[66] Rec. Doc. 20, p. 10, ¶ 14k.
[67] Rec. Doc. 20, p. 5, ¶5h.
[68] Rec. Doc. 20, pp. 6-7, ¶5l.

of wrongdoing does not rise to any sufficient allegation of an agreement to conspire.[69]

For these reasons, and those provided above regarding the conspiracy claims against AFA, the Court GRANTS PEC's *Motion to Dismiss.*

## V. Conclusion

Therefore, Livingston Parish and Luther Layton Ricks, Jr.'s *Motion to Set FRCP Rule 12(b)(3) Motion to Dismiss for Improper Venue for Contradictory Hearing,*[70] is also DENIED. Furthermore, the Livingston Parish and Luther Layton Ricks, Jr.'s *FRCP Rule 12(b)(3) Motion to Dismiss for Improper Venue*[71] is GRANTED IN PART and DENIED IN PART. The LUPTA claims are dismissed without prejudice. The Court retains jurisdiction over Plaintiffs' state law claims against the Livingston Parish Defendants arising under La. R.S. 23:967 and La. R.S. 42:1169, and 42 U.S.C. § 1983 claims involving the First and Fourteenth Amendments.

Furthermore, Defendant Alvin Fairburn and Associate's *First Motion to Dismiss*[72] is DENIED as MOOT, and its *Second Motion to Dismiss*[73] is GRANTED.

Additionally, Defendant Professional Engineering Consultants Corporation's *Motion to Dismiss*[74] is also GRANTED.

---

[69] Rec. Doc. 42, p. 12.
[70] Rec. Doc. 37.
[71] Rec. Doc. 6.
[72] Rec. Doc. 11.
[73] Rec. Doc. 22.

17

**ACCORDINGLY**, Plaintiffs' remaining claims against Defendants, Alvin Fairburn and Associates, Professional Engineering Consultants Corporation, and International Equipment Distributors, Inc., are hereby DISMISSED, and all remaining pending motions shall be DISMISSED as MOOT.

Signed in Baton Rouge, Louisiana, on August 30, 2013.

*[signature]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[74] Rec. Doc. 25.