**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| COREY DELAHOUSSAYE<br>AND C-DEL, INC.<br><br>VERSUS<br><br>LIVINGSTON PARISH, LOUISIANA<br>LUTHER LAYTON RICKS, JR.<br>INDIVIDUALLY AND IN HIS OFFICIAL<br>CAPACITY, ALVIN FAIRBURN AND<br>ASSOCIATES, PROFESSIONAL<br>ENGINEERING CONSULTANTS<br>CORPORATION, AND INTERNATIONAL<br>EQUIPMENT DISTRIBUTORS, INC. | CIVIL ACTION<br><br><br>NO. 12-00481-SDD-SCR |

**RULING**

Before the Court is a *FRCP Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted*[1] filed by Defendants, Livingston Parish, Louisiana, and Luther Layton Ricks, Jr., individually and in his official capacity. Plaintiffs, Corey Delahoussaye and C-Del, Inc., have filed an *Opposition*[2] to Defendants' motion.

**I.    BACKGROUND**

Plaintiffs, Corey Delahoussaye and C-Del, Inc., filed this lawsuit on August 8, 2012 against Defendants, Livingston Parish, Parish President Luther Layton Ricks, Jr., individually and in his official capacity ("Livingston Parish Defendants"), Alvin Fairburn and Associates ("AFA"), Professional Engineering Consultants Corporation ("PEC"), and International Equipment Distributors, Inc. ("IED"). The lawsuit arises out of Livingston Parish's termination of a contract that the Parish Council had with Plaintiff C-Del to

---
[1] Rec. Doc. 45.
[2] Rec. Doc. 50.
DM No. 2048

1

organize and manage certain post-Gustav clean-up efforts in Livingston Parish.[3] The Parish terminated C-Del's contract amid allegations of improper billing practices and violations of federal and state laws, rules, and regulations by C-Del. Following termination of the clean-up contract, Plaintiffs, C-Del and its principal Corey Delahoussaye, brought this suit alleging conspiracy to deprive Plaintiffs of their constitutional rights guaranteed under the First and Fourteenth Amendments. Plaintiffs further assert state law claims for retaliation, defamation, libel, and slander, and unlawful and deceptive trade practices under La. R.S. 51:4109.[4]

The Livingston Parish Defendants now urge dismissal of the remaining claims against them on the grounds that: (1) Plaintiffs are not "employees" for purposes of La. R.S. 23:967 and La. R.S. 42:1169; (2) the factual allegations are insufficient to support Plaintiffs' conspiracy claims and any direct, non-conspiracy claims arising under the First and Fourteenth Amendments; and (3) Defendant Ricks, asserts qualified immunity as to any remaining individual capacity claims against him.

## II.  LAW AND ANALYSIS

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[5] The Court may consider "the complaint, its proper attachments, documents incorporated into

---

[3] Plaintiffs' *Complaint* names Livingston Parish, Louisiana as a Defendant. The Agreement, however, is entered into by and between the "Livingston Parish Council" and C-Del, Inc. Pursuant to Livingston Parish's Home Rule Charter, the "legislative power of the parish government shall be vested in a council". Thus, for purposes of this case, Livingston Parish and the Livingston Parish Council refer to the same juridical entity. See Livingston Parish Home Rule Charter, Art. II, Section 2-01.

[4] The Court has previously dismissed Plaintiffs' Louisiana Unfair Trade Practices Act ("LUTPA") claims without prejudice but retained jurisdiction over the remaining allegations against Livingston Parish Defendants arising under La. R.S. 23:967, La. R.S. 42:1169, and the First and Fourteenth Amendments. The Court also previously dismissed Defendants AFA and PEC finding that Plaintiffs had failed to plead a viable conspiracy claim against the private entity Defendants. See Rec. Doc. 43.

[5] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

the complaint by reference, and matters of which a court may take judicial notice."[6]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[7]  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.[8]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[9]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[10]  However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[12]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[13]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[14]

---

[6] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)(quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[7] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, at 570 (2007)).
[8] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) (hereinafter *Twombly*).
[9] *Twombly*, 550 U.S., at 555 (internal citations and brackets omitted).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, at 678 (2009)(internal citations omitted)(hereinafter "*Iqbal*")(quoting *Twombly*, 550 U.S., at 557).
[11] *Id.* (citing *Twombly*, 550 U.S., at 556).
[12] *Id.*
[13] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tx. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[14] *Twombly*, 550 U.S., at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## A. Plaintiffs' Whistleblower Claims

Plaintiffs assert whistleblower claims under La. R.S. § 23:967 and La. R.S. 42:1169. While both statutes address retaliation against whistleblowers, the latter is concerned solely with public employees.

1. <u>Louisiana's Whistleblower Statute: La. R.S. 23:967</u>

The Louisiana Whistleblower Statute ("LWS"), La. R.S. § 23:967, provides in pertinent part that:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

In order to state a claim for relief under the LWS, a plaintiff must "plead sufficient factual matter to make out a plausible claim that: (1) his employer violated the law through a prohibited workplace act or practice; (2) he advised his employer of the violation; (3) he then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) he was fired or suffered some other adverse employment action as a result of his refusal to participate in the unlawful practice or threat to disclose the practice."[15] The statute expressly refers to "employers" and "employees".

The Livingston Parish Defendants contend Louisiana's Whistleblower Statute has no application to the facts of this case because there was no employer-employee

---
[15] *Richardson v. Axion Logistics, LLC*, 2014 WL 988840, at *3 (M.D.La. Mar. 12, 2014).
DM No. 2048
4

relationship between the Parish and the Plaintiffs. Defendants maintain that the relationship between the parties was purely contractual and that the contract was between C-Del and Livingston Parish Council, and not with Delahoussaye. Defendants contend that C-Del was an independent contractor and that, as a corporate entity, C-Del cannot be an "employee" as a matter of law. Defendants also argue, as a matter of fact, that the Parish did not compensate Delahoussaye, provide him with any employee benefits, or withhold any taxes on his behalf. These facts are not established in the pleadings and no evidence was offered by the Defendants to establish these facts and, therefore, the Court disregards these factual allegations for purposes of this Motion.

Plaintiffs argue that the determination of Livingston Parish's status as employer requires a fact intensive inquiry and is an improper determination on a motion to dismiss. Because the Louisiana Whistleblower Statute does not define "employee," Plaintiffs further direct the Court's attention to the Code of Governmental Ethics Whistleblower Statute, La. R.S. 42:1169, to support their position that they are employees.

Whether a corporate contractor, such as C-Del, can be considered an "employee" for purposes of the state law whistleblower protection is *res nova*. In conducting its own research on the LWS, the Court was unable to find any cases involving a corporate contractor asserting a state whistleblower claim against a public entity. Notably, the Plaintiffs cited no Louisiana jurisprudence supporting the contention that corporate contractors are intended to be construed as employees under the LWS. Rather, the jurisprudence relied upon by the Plaintiffs is distinguishable because, in those cases, the whistleblower claims arose out of First Amendment constitutional

protections and Louisiana's Environmental Whistleblower Statute.[16] Lack of jurisprudence aside, however, the Court finds that Plaintiffs' claims arising under the LWS fail to state a claim for other reasons.

On a motion to dismiss, the Court must accept all well-plead facts as true. After reviewing the *Original* and *Supplemental and Amending Complaints*, the Court finds that Plaintiffs did not allege the existence of an employer-employee relationship with the Livingston Parish Defendants. The Plaintiffs allege that they "provide their services to Livingston Parish pursuant to a contract executed October 27, 2009" which contract was subsequently amended as pertaining to the scope of work.[17] Plaintiffs allege that C-Del invoiced the Parish for services rendered and the Parish was contractually obliged to remit payment for those services.[18] Plaintiffs make not a single allegation of an employer-employee relationship between the parties.

Because the Plaintiffs attached the parties' Agreement to their *Original Complaint*, the Court will consider it for purposes of the pending *Motion to Dismiss*.[19] A plain reading of the Agreement between C-Del and the Parish does not indicate that the

---

[16] *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996); *Collins v. State ex rel. Dept. of Natural Resources*, 118 So.3d 43 (La.App. 1 Cir. 5/30/13).

[17] Rec. Doc. 1, ¶¶ 3- 4. "On October 27, 2009, Defendant Livingston Parish entered into a contract with Petitioners whereby Petitioners were to organize and oversee certain aspects of clean-up efforts conducted by AFA, PEC and IED in Livingston Parish necessitated by Hurricane Gustav." ¶ 3. "Petitioners provide their services to Livingston Parish pursuant to the contract executed on October 27, 2009. On March 30, 2010, the contract was amended to include a specific scope of work which directly included interface on behalf of Livingston Parish with Federal and State officials. On July 28, 2010, the contract as amended again to broaden the scope of Petitioners duties to include monitoring services for burn site de-activation…As best evidence of their contents, the referenced contracts, as amended are attached hereto and made part hereof as Exhibit 1, in globo." ¶ 4.

[18] Rec. Doc. 1,¶ 5. "[U]nder the plain terms of Petitioner's contract, defendant Livingston was required to remit payment for services within 30 days of receipt of invoice for services rendered." Rec. Doc. 1, p. 6. "Livingston Parish, through its Council, on June 19, 2012 ordered that the sum of $373,242.54 be paid to Petitioners, but as of present, Petitioners still have not received the monies due and owing to them for services performed pursuant to its contracts with Livingston Parish."

[19] Rec. Doc. 1-8. (See also, Rec. Doc. 1, p. 3, ¶4 wherein Plaintiffs state, "As best evidence of their contents, the referenced contracts, as amended, are attached hereto and made part hereof as Exhibit 1, in globo.").

parties contemplated an employment relationship. The Agreement identifies and defines the Livingston Parish Council as "Owner" and C-Del as the "Contractor." Delahoussaye is not a party to the contract. The contract requires C-Del to "furnish all materials, tools, equipment, manpower, and consumables to complete the work."[20] The contract provides that "[t]his Agreement shall be dissolved upon the completion of the task . . . or by 30 days written notice of either party."[21] The contract defines a "scope of work" to be completed by C-Del and remuneration to C-Del under the contract was to be on a time and expense basis to be invoiced by C-Del.[22] C-Del was required to have "full and complete worker's compensation coverage".[23] C-Del, as Contractor, agreed to

> indemnify and hold harmless [Livingston Parish], its officers, agents, and employees, from and against any and all liability, claims, damages, demands, expenses, fees, fines, penalties, suits, proceedings, actions, and costs of actions, including attorney's fees for trial and on appeal, and for the preparation of same arising out of [C-Del's], its officers', agents', and employees' acts, or omissions associated with this Agreement arising out of or related to the personal injury or property damage, unless such claims or liability results from the wrongful acts or omissions of the [Livingston Parish] or its agents, employees, agents or representatives.[24]

Neither the factual allegations of the Plaintiffs' *Complaint,* nor the plain language of the parties' Agreement, support the existence of an employer-employee relationship necessary to state a claim under La. R.S. 23:967. The Court declines to make an *Erie* guess on whether the LWS, which by its clear and unambiguous terms applies to "employees", would be interpreted by a Louisiana state court to apply to independent contractors. Accordingly, Plaintiffs' claims arising under La. R.S. 23:967 will be dismissed for failure to state a claim.

---

[20] Rec. Doc. 1, Exhibit 1 § I
[21] Rec. Doc. 1, Exhibit 1 § II
[22] Rec. Doc. 1, Exhibit 1 § IV, Exhibits A and B.
[23] Rec. Doc. 1, Exhibit 1 § VII, C.2.
[24] Rec. Doc. 1, Exhibit 1 § VII
DM No. 2048

### 2. Code of Governmental Ethics Whistleblower Statute: 42:1169

La. R.S. 42:1169 is a component of Louisiana's Code of Governmental Ethics, and provides in pertinent part as follows:

> B. (1) If any public employee is suspended, demoted, dismissed, or threatened with such suspension, demotion, or dismissal as an act of reprisal for reporting an alleged act of impropriety in violation of this Section, **such employee shall report such action to the [Board of Ethics]**.
>
> C. **The board shall provide written notice of the commencement of an investigation** of a report of a violation of his Section … If the board determines, following an investigation, that it shall offer a consent opinion or conduct a public or private hearing to receive evidence and determine whether any violation of this Section has occurred, **the board shall provide written notice of the hearing or consent** …
>
> D. **… the board shall forward a copy of its findings to the district attorney of the parish in which the violation occurred for appropriate action.** Thereafter, notwithstanding any other provision of this Chapter, such district attorney shall have access to all records of the board relative to such findings.[25]

Based on the Court's finding that the Plaintiffs failed to plead the existence of an employer-employee relationship, claims arising under La. R.S. 42:1169, Louisiana's Code of Government Ethics Whistleblower Statute, must also fail. Alternatively, even if Plaintiffs were deemed to be public employees, the Court lacks subject matter jurisdiction over claims arising under La. R.S. 42:1169, because federal and Louisiana state courts have concluded that there is no right of private action under La. R.S. 42:1169.[26] Accordingly, Plaintiffs' claims under La. R.S. 42:1169 are dismissed for failure to state a claim.

---

[25] La. R.S. 42:1169.(emphasis added). (The Court is aware of the Louisiana Legislature's Amendment to this statute during the 2014 Legislative Session. (Act 362)).
[26] *Wells v. City of Alexandria*, 2004 WL 909735, at *2 (5th Cir. April 29, 2004)("The Code [of Governmental Ethics] does not provide a private cause of action for government employees, except that a

DM No. 2048

**B. Plaintiff's 42 U.S.C. § 1983 Claims Arising Under the First and Fourteenth Amendments**

The Livingston Parish Defendants seek dismissal of Plaintiffs' individual and conspiracy § 1983 claims arising under the First and Fourteenth Amendments. As noted, the Court has previously dismissed the conspiracy claims.[27] Hence, the Court will address only the Plaintiffs' §1983 claims arising under the First and Fourteenth Amendment Claims as against the Parish and Ricks.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[28] In order to state a claim under 42 U.S.C. § 1983, the Plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct or deprivation complained of was

---

court may enforce an order or decision of the Board, *id.* § 1135, and that appeals of these administrative decisions may be made to the First Court of Appeal, *id.* § 1142." See also *Nolan v. Jefferson Parish Hosp. Serv. Dist. No.2*, 790 So.2d 725, 732 (La.Ct.App. 2001)('Jurisdiction to enforce the Code of Governmental Ethics lies in the Board of Ethics. We find no provision of any private right of action under the Code of Governmental Ethics; the employee's remedy is to complain to the Board of Ethics, which then investigates and takes action to protect the employee, if appropriate.)(citation and footnotes omitted).')."(unpublished). See also, *Gogreve v. Downtown Development Dist.*, 426 F.Supp.2d 383, 389 (E.D.La. 2006)(""the Code of Ethics does not provide plaintiff with a private right of action."). More recently, the Louisiana Court of Appeal for the First Circuit found that a plaintiff had failed to state a cause of action arising under La. R.S. 42:1169 because "[a]n employee's remedy under the Code of Governmental Ethics is through the Board of Ethics … Louisiana Revised Statutes 42:1169(E) does not provide an independent right of action, rather, it relies upon other statutes to provide a right of action." *Collins v. State ex rel. Dept. of Natural Resources*, 118 So.3d 43, 48 (La.App. 1 Cir. 2013).
[27] In their *Supplemental and Amending Complaint*, Plaintiffs allege that certain private actors named as defendants conspired with the public actors (Livingston Parish Council and the Parish President Layton Ricks) to violate Plaintiffs' constitutional rights and in violation of state law. The Court previously dismissed the conspiracy claims. This Court ruled: "Interpreting the well-pleaded facts as true, the Court finds that the Plaintiffs have failed to show specific facts of any agreement among the Defendants to support a viable conspiracy claim * * * * the Court finds that the factual allegations fail to suggest that an agreement among the Defendants was, in fact, made. Therefore, Plaintiffs' conspiracy claims cannot survive a Rule 12(b)(6) motion to dismiss". Rec. Doc. 43
[28] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
DM No. 2048

9

committed by a person acting under color of state law."²⁹ As for the first element, 42 U.S.C. § 1983 only imposes liability for a violation of rights protected by the United States Constitution—not for violations of duties of care arising out of tort law.³⁰ As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."³¹

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."³² Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. However, to be liable in one's official capacity under § 1983, the defendant must have been delegated policy-making authority under state law. In contrast, a state actor may have § 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law. A state actor may assert qualified immunity from individual capacity liability.

1. First Amendment Retaliation

Plaintiff Delahoussaye claims that he "enjoyed clearly established rights to report and oppose unlawful practices" guaranteed by the First Amendment.³³ To state a First Amendment retaliation claim, a public employee must allege that he suffered an

---

²⁹ *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D.La. 1998). *See also*, *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 500-01 (M.D. La. 2013).
³⁰ *Griffith v. Johnston,* 899 F.2d 1427, 1436 (5th Cir. 1990).
³¹ *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
³² *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478 (5th Cir. 2000).
³³ Rec. Doc. 1, p.7.
DM No. 2048

10

adverse employment decision owing to speech on matters of public concern and that the employee's interest in commenting on matters of public concern outweighed the defendant's interest in promoting efficiency.[34] Public employees and independent contractors are afforded First Amendment protection from retaliation for speaking out on matters of public concern.[35]

In *O'Hare Truck Service, Inc., et al. v. City of Northlake*, the owner and operator of a tow truck service sued the City of Northlake for retaliation under the First Amendment when his company was removed from the rotation list of available towing companies for failure to support the incumbent mayor's re-election campaign.[36] In *O'Hare*, the Supreme Court recognized the deep-rooted distinction between employees and independent contractors in our legal tradition. Nevertheless, the Court found no reason why First Amendment protections "should turn on the distinction, which is, in the main, a creature of the common law of agency and torts."[37] The *O'Hare* Court, relying on another Supreme Court decision rendered the same day addressing First Amendment rights and independent contractors, stated: "A rigid rule 'giv[ing] the government carte blanche to terminate independent contractors for exercising First Amendment rights … would leave [those] rights unduly dependent on whether state law

---

[34] *Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.,* 463 F.3d 378, 382 (5th Cir. 2006) (citing *Kinney v. Weaver,* 367 F.3d 337, 356 (5th Cir. 2004)(en banc).

[35] Both of the following Supreme Court cases were decided on the same date, June 28, 1996. *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996); *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 678-79 (1996)("We therefore see no reason to believe that proper application of the *Pickering* balancing test cannot accommodate the differences between employees and independent contractors. There is ample reason to believe that such a nuanced approach, which recognizes the variety of interests that may arise in independent contractor cases, is superior to a bright-line rule proposed by the Board and the dissent would give the government carte blanche to terminate independent contractors for exercising First Amendment rights. And that bright-line rule would leave First Amendment rights unduly dependent on whether state law labels a government service provider's contract as a contract of employment or a contract for services, a distinction which is best a very poor proxy for the interests at stake.").

[36] *O'Hare Truck Service, Inc.* at 722.

[37] *Id.*

DM No. 2048

labels a government service provider's contract as a contract of employment or a contractor for services, a distinction which is at best a very poor proxy for the interests at stake."[38] It was the Court's concern that reliance on such a distinction in assessing such constitutional claims "would invite manipulation by government, which could avoid constitutional liability simply by attaching different labels to particular jobs."[39] Ultimately, the Court "decline[d] to draw a line excluding independent contractors from the First Amendment safeguards of political association afforded to employees."[40] Hence, the Court finds that the Plaintiffs' failure to allege sufficient facts of an employee-employer relationship is not fatal to the Plaintiffs' First Amendment retaliation claim.

At this stage, the Court must construe the well-plead allegations in Plaintiffs' *Original* and *Supplemental and Amending Complaints* as true. Considering the first element of a First Amendment retaliation claim, the Court finds that Plaintiffs have alleged an adverse employment action by virtue of the termination of C-Del's contract with Livingston Parish.

In determining whether speech addresses matters of public concern, the Court must consider "the content, form, and context of a given statement, as revealed by the whole record."[41] "Speech is not constitutionally protected if it is solely personal or job-related; it must relate 'to a matter of political, social, or other concern to the community.'"[42] "Speech relates to a matter of public concern if it contributes to an informed dialog in a democratic society or contributes informed opinions on important

---

[38] *Id.* at 721 (quoting *Board of Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S., at 679).
[39] *Id.* at 722.
[40] *Id.* at 726.
[41] *Thompson v. City of Starkville*, Miss., 901 F.2d 456, 461 (5th Cir. 1990)(quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)(footnote omitted)).
[42] *Gil Ramirez Group, LLC v. Houston Independent School Dist.,* 2013 WL 6079517 at *15 (S.D. Tex. 2013) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

public issues."⁴³  For instance, matters of public concern include the following: "[p]olitical speech, protests against racial discrimination, speech addressing public safety issues, statements addressing official misconduct, and testimony in judicial proceedings."⁴⁴

"[B]efore asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job."⁴⁵  "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties."⁴⁶  "Moreover, even if speech is 'not necessarily required' by an employee's job duties, it is not protected if it is sufficiently related to them."⁴⁷  There are several factors that may be considered in determining whether speech is afforded First Amendment protections.  Furthermore, when a public employee "takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen."⁴⁸

Delahoussaye alleged that he "uncovered various irregularities with and improper billing," "unauthorized drainage district work orders", "irregularities with arrangements for debris removal", "unauthorized lease agreements", "misappropriation of funds", and

---

⁴³ *Marceaux v. Lafayette City-Parish Consol. Government*, 921 F.Supp.2d 605, 634 (W.D. La. 2013)(quoting *Shatkin v. Univ. of Texas at Arlington*, No. 4:06-CV-882-Y, 2009 WL 614788, at *4 (N.D. Tx. Mar. 10, 2009)(citing *City of San Diego v. Roe*, 543 U.S. 77, 82-83, 124 S.Ct. 521 (2004)).
⁴⁴ *Id.* at 635 (internal citations omitted).
⁴⁵ *Davis v. McKinney,* 518 F.3d 304, 312 (5th Cir. 2008)(quoting *Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006)(citing *Garcetti v. Ceballos*, 547 U.S. 410, 444 (2006)).
⁴⁶ *Williams v. Dallas Independent School Dist.*, 480 F.3d 689, 692 (5th Cir. 2007)(citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).
⁴⁷ *Lewis v. San Jacinto County Appraisal Dist.*, 2010 WL 3784492 at *4 (S.D. Tex. Sept. 23, 2010)(citing *Charles v. Grief*, 522 F.3d 508, 513 (5th Cir. 2008)).
⁴⁸ *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)(Citing *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006)).

other violations of Louisiana and Federal laws.[49]  Plaintiffs alleged that Delahoussaye reported these alleged irregularities to Parish officials and the media.[50]  Accepting the well-plead factual allegations as true, the Court finds that Plaintiffs have sufficiently plead facts that would plausibly support a conclusion that Delahoussaye's speech was a matter of public concern.[51]

As to the third and fourth elements, Plaintiffs have alleged that C-Del's contract was terminated because Delahoussaye reported the alleged illegal activity to State and Federal agencies.[52]  According to the Plaintiffs' allegations, C-Del was contractually obliged to ensure the Parish's compliance with state and federal laws.[53]  Based on this allegation, the Court concludes that Plaintiffs have plead sufficient facts from which it is plausible to conclude that the Plaintiffs' interests in engaging in protected speech outweighed the Livingston Parish Defendants' need for efficiency.[54]  Accordingly, the Court finds that the Plaintiffs have stated a viable claim of First Amendment retaliation.

2. Fourteenth Amendment Claims

Neither party substantively briefed the Plaintiffs' Fourteenth Amendment claims. In moving for dismissal of these claims, the Defendants merely regurgitate the 12(b)(6)

---

[49] Rec. Doc. 1, pp. 3-4.
[50] Rec. Doc. 1, p. 4.  ("Due to Petitioners' whistle-blowing activities and reporting the unlawful actions of Defendants IED, Livingston, PEC, and AFA to the appropriate authorities and the media, Defendant Livingston Council voted on August 25, 2011, to terminate its contract with Petitioners.  On September 24, 2011, that contract was officially terminated.")
[51] Ostensibly made on behalf of his company, C-Del.
[52] Rec. Doc. 1, p. 4.
[53] Rec. Doc. 1, p. 3.
[54] Rec. Doc. 1, pp. 2-3. ("Petitioner Mr. Delahoussaye, the President of C-Del, is primarily responsible for oversight of the operations of C-Del and, by himself, possesses the expertise attributed to C-Del herein.")("Defendant Livingston Parish entered into a contract with Petitioners whereby Petitioners were to organize and oversee certain aspects of clean-up efforts … necessitated by Hurricane Gustav.  As part of these responsibilities, Petitioners were part of the services the Parish obtained to remove debris from the hurricane [and to meet] FEMA's and GOHSEP's eligibility rules so that the Parish could pay the contractors who completed this work with the allotted federal funds which met Environmental compliance.").

DM No. 2048
14

pleading standards as elucidated by the Supreme Court in *Twombly* and *Iqbal*. The Defendants utterly fail to substantively address the Fourteenth Amendment and provide no analysis, whatsoever, applying the substantive Fourteenth Amendment law to the allegations of the Plaintiffs' *Original* and *Supplemental and Amending Complaints*. Defendants fail to "provide a concise statement of reasons in support" of dismissal of the Fourteenth Amendment claims as required by Local Rule 7.[55] Accordingly, the Court finds that the Plaintiffs' Fourteenth Amendment claims, if any, have been insufficiently challenged and, therefore, the Defendants' *Motion to Dismiss the Fourteenth Amendment* claims shall be denied.

**C. Defendant Ricks' Qualified Immunity Defense**

In what can best be described as belt and suspenders argument, Defendant Luther Layton Ricks, the Parish President, submits that he is entitled to qualified immunity "with regard to any of the remaining claims asserted against" him because "the alleged actions on his part constituted discretionary functions and did not violate clearly established rights of which a reasonable person would have known."[56]

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable persons would have known.'"[57] To overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right and show

---

[55] Middle District of Louisiana's Local Rules, available on-line at http://www.lamd.uscourts.gov/court-info/local-rules-and-orders.
[56] Rec. Doc. 45-1, p. 6. In particular, Ricks argues that his "statement that the Parish was not going to pay plaintiffs the amounts which plaintiffs claimed they were owed pending the outcome of any ongoing investigation of the Louisiana Inspector General's Office" does not support a finding that he is "plainly incompetent" or that he "knowingly violated the law" and therefore he is entitled to qualified immunity. Rec. Doc. 45-1, at pp. 7-8.
[57] *Winston v. City of Shreveport*, 390 Fed.Appx. 379, 383 (5th Cir. 2010)(quoting *Pearson v. Callahan*, 555 U.S. 223, 230 (2009)).

that "the right was 'clearly established' at the time of the challenged conduct."[58] And yet, "[e]ven if the government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable."[59] "Objective reasonableness is gauged by assessing whether at the time and under the circumstances of the challenged conduct '*all* reasonable officials' in the same circumstances would have come to the realization that the conduct complained of violated a constitutional provision."[60]

It is well-established within the Fifth Circuit that "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[61] Having offered **no** response within their *Opposition Memorandum* to counter Ricks' qualified immunity argument, the Plaintiffs have failed to satisfy their burden. While it is true that this Court has found that plausible grounds exist to support a First Amendment retaliation claim and that the Fourteenth Amendment claims survive dismissal under Rule 12(b)(6), Plaintiffs have made no attempt to show that Defendant Ricks' actions were objectively unreasonable. Accordingly, the Court grants Defendant Ricks' *Motion to Dismiss* the individual capacity claims arising under 42 U.S.C. § 1983 on the grounds of qualified immunity.

---

[58] *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[59] *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008).
[60] *Newman Marchive Partnership v. Hightower*, 735 F.Supp.2d 483, 502 (W.D.La. 2010)(quoting *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997)(emphasis added)).
[61] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). See also, *Rushing v. Bd. of Supervisors of Univ. of La. System,* 2011 WL 6047097, at *2 (M.D.La. Dec. 5, 2011); See *Alexander v. Brookhaven School Dist.*, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009)(quoting *McClendon* 305 F. 3d at 322 in support of its reasoning that plaintiff had failed to meet her burden, "having offered only a cursory argument embedded within her response to [Defendant's] motion")).
DM No. 2048

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Livingston Parish Defendants' *FRCP Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted* is GRANTED IN PART and DENIED IN PART.[62]

**IT IS FURTHER ORDERED** that the Defendants' *Motion to Dismiss* the state law whistleblower claims arising under La. R.S. 23:967 and La. R.S. 42:1169 is GRANTED, and the Plaintiffs' claims for violations of La. R.S. 23:967 and La. R.S. 42:1169 are hereby dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Defendants' *Motion to Dismiss* the Plaintiffs' 42 U.S.C. § 1983 claims arising under the First and Fourteenth Amendments is hereby DENIED.

**IT IS FURTHER ORDERED** that the Defendant Parish President Luther Layton Ricks' *Motion to Dismiss* on the basis of qualified immunity is hereby GRANTED, and the Plaintiffs' individual capacity claims against Luther Layton Ricks arising under 42 U.S.C. § 1983 are hereby dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on <u>September 11, 2014</u>.



**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[62] Rec. Doc. 45.
DM No. 2048